DOBBS, *et al. versus* DISTRIBUTEES OF COCKERHAM.

The Orphans' Court, in this State, has jurisdiction in a case of administration, where the truth of an inventory is contested; and may try and decide the question, whether, or not, certain property belongs to the estate.

In settling a contest of this kind, the Orphans' Court has authority to summon a jury to determine questions of fact, on which the parties interested may be at issue.

Where, in such a case, it is decided that certain property, not embraced in the inventory, belongs to the estate, the Court has power to direct a division of such property among the distributees; or if that cannot be done, a public sale of the property should be ordered, as provided for by the statute, and the proceeds of such sale should be divided, and it is error for the Court at once to give judgment against the administrator in *cash*, in favor of the distributees, for the value of the property as assessed by the jury.

The jurisdiction extended to the County Court in cases of this character, does not deprive parties of their remedy by action on the bond, or by bill in chancery.

This case came to the Supreme Court, on the final decree of the Orphans' Court of Pickens, in relation to the settlement of an estate.

Dobbs and Cockerham, administrator and administratrix, of the estate of William W. Cockerham, having been required to make final settlement and distribution of the estate of their intestate, the defendants in error, heirs of said estate, filed a statement, alleging, that the administrator and administratrix had not made a complete inventory of the estate; that certain slaves mentioned and described in the statement, had been wholly omitted, and no return

made thereof, and that the said slaves had gone into the possession of the said plaintiffs in error.

A demurrer having been tendered on the part of the administrator and administratrix to this statement, and it being disclosed to the Court that no inventory had ever been filed, the demurrer was overruled, and leave given the representatives to file an inventory, and to answer to the statement.

The answer of the plaintiffs in error, set forth, that the slaves mentioned in the statement of the defendants, were not of the estate of their intestate, but had been loaned to him during his life time, and properly belonged to the administratrix and her children: that only four of the said slaves were in the possession of the intestate at the time of his death; that the residue had been distributed in his life time among the children of the administratrix, and that the four in possession of intestate at the period had since that time remained in the possession of the administratrix, as her own property.

LAW SCHOOL LIBRARY

The defendants in error demurred, likewise, to this answer, which being overruled, they replied, on leave, denying the loan, &c. and averring the slaves to be the property of the estate, and subject to distribution.

After a demurrer to this reply, issue was joined upon these allegations, and a jury being summoned to try the facts, they found the four slaves above mentioned, subject to distribution, and assessed their value and the value of their hire, while in possession of the plaintiffs.

A motion in arrest of judgment having been then argued and denied, the Court rendered a final decree, including a decision upon the whole value of the estate, as before inventoried and sold, and the amount of the verdict of the jury ; and gave judgment for a

certain amount in money, in favor of the distributees of Cockerham's estate.

To reverse this decree the plaintiffs took their writ of error.

PECK, for Plaintiffs in error—Argued, that the distributees, in proceeding against the representatives of the estate, mistook their remedy; and the Court mistook its powers.

The County Court for the transaction of orphans' business, (he said,) is a Court of special jurisdiction. It has not general common law powers. If we would know what such a Court may do, we must look to the statutes from which its powers are derived. It can exercise no powers but such as have been expressly delegated to it. It may be true, that a revising tribunal will not be very strict as to the formality of the proceedings of such a Court as this, provided it keep within its jurisdiction; but it will be held to strictness in regard to the limits of its jurisdiction.

We have no law authorising this Court to enquire whether certain property did, or did not, belong to the estate. It became the duty of the representatives, to return to Court within three months, an inventory, upon oath, of the goods and chattels, rights and credits, of the estate of the intestate; which, if received by the Judge, was to be made a matter of record. Such record cannot be afterwards impeached, except for fraud.

The inventory became the foundation, on which the settlement and decree should have been made. With the sale bill, it forms the foundation of all the subsequent proceedings. A notice is required to be given of the time of the settlement. At this time the parties interested, may come in and make their ob-

jections to the account stated. And then the Judge is not to call a jury and try the issue, but he is to hear all that is to be said; and, if it seems to be necessary, he may re-state the account; or he may appoint auditors, before whom the parties may appear, and make their statements and explanations. These auditors may then re-state the account, and return the same to Court. Such is the mode pointed out by the statutes; but we find nothing there to justify this proceeding. There are cases in which a Court may impannel a jury, as in a case of contempt in assessing a fine; also, where it shall be suggested that the administrator has appropriated to his own use *a portion of the funds* of the estate, which is denied by the administrator on oath. These, perhaps, are the only two cases where the Court possesses the power. The funds here spoken of must be money : it must be the funds of the estate. The return shews what these funds are. In such case a jury may be called; but the Court cannot impannel a jury without express authority.

Where a question arises, whether certain property does, or does not belong to the estate, the persons interested can have the question investigated, and the administrator is entitled to a common law trial.

But can the Court go back, behind the inventory, and raise a question as to the right of certain property, whether it belonged to the estate, or to the representative in another right? I contend that the County Court has no such power.

But if the jurisdiction of the Court were admitted, the proceedings would still be erroneous. The verdict goes beyond the issue, and the judgment beyond the verdict. The only issue was, did certain slaves belong to the estate? The jury find that a part of

them did belong to the estate : they find also the value of those slaves, the time they were in the possession of the administrator and administratrix, and the value of their hire for that time. And the Court, instead of directing that these slaves should be embraced in the inventory, and go in the ordinary course of distribution, gave judgment against the administrator and administratrix, for their value in money, and also for the amount of their hire.

SHORTRIDGE, contra.—There has been a settlement of the estate. If there should appear to be error as to the four negroes (but I contend there was none) there would be no need of overturning the entire settlement, or otherwise disturbing the final distribution of the estate, except as to those slaves.

The most important question is, whether the Judge of a County Court has a right to call on an administrator to make settlement for property, belonging to the estate, not embraced in the inventory, as well as for property that is so embraced? Is the Judge limited to the inventory and sale bill?

By reference to our statute,[a] it will be seen that the County Court, as to final settlement and distribution of the estate, is one of extensive and ample jurisdiction. And my Lord Coke says, that wherever a power is granted, all is granted that is necessary to carry the power into effect. It does not vitiate the proceedings that the Judge called in the aid of a jury. If the statute had not given that power, it would still have been incidental to the power granted. If the Judge had the right to settle the matter, he had a right to call in aid—whether you call that aid jurymen or auditors. But the act authorises a jury in any case where it may be necessary. The Judge,

[a] Aik. Dig. 252.

in this case, was more regular and formal in his proceedings than in the County Court. He required a statement, and a regular issue to be made up between the parties.

If the act had not given the power of summoning a jury, &c. yet the Judge would have had the power in the way it is possessed by a chancellor, who may at any time have the aid of a master, of auditors, or of a jury, as to matters of fact. The Judge might have decided all he did decide, himself: is there, then, any reason for overturning the proceeding, because, out of abundant caution, he called in the aid of a jury?

As to the final judgment or decree being erroneous, I contend that it was the fault of the administrator and administratrix, that this property was not embraced in an inventory, and could not, therefore, go in the ordinary course of distribution; they were, therefore, liable to a judgment against them for the value of the slaves, and the amount of the hire in money.

By Mr. Justice HITCHCOCK :

The plaintiffs in error, who are administrator and administratrix of William W. Cockerham, deceased, were cited before the Judge of the County Court of Pickens county, to make final settlement of their administration, and to make distribution of the estate among the heirs. At the hearing before the Judge in October, 1833, the defendants in error, a part of said heirs, filed a statement as follows :

" The distributees, in the above case, allege and aver, that the said administrators have not made a true and perfect and complete inventory of the personal estate of their intestate, but that they have neg-

lected and omitted to return in said inventory, the following negroes, to-wit, Hannah, &c. (some nine or ten in number.) The distributees farther allege, that the aforesaid negroes came to the possession or knowledge of the said administrators, and ought by them to have been embraced in their inventory of the estate of their intestate, and should go in course of distribution among the distributees."

To this statement the plaintiffs in error demurred; and it appearing that they had not filed any inventory, leave was then given them to file one, which was done, and which was recorded.

On argument, the demurrer was overruled; and leave was given them to answer or plead to issue; which, at their request, they were to make under oath. Leave was also given the distributees to file an amended statement; and leave being given to either party to have subpœnæs, and commissions for testimony, the case was continued to January, 1834, at which time the administrators filed their answer; in which they state,—

"That the intestate, before his marriage with Nancy Cockerham, (who is one of the respondents) was intermarried with another woman, since deceased, by whom he had children, towit, the said Wm Cockerham and —— Cockerham, who, by her intermarriage with Elsey Hunt, became the mother of Wm. and Huron Hunt, who, in this cause, appear in the character of complainants, under the denomination of distributees of William. W. Cockerham : that after the decease of his first wife, William W. Cockerham intermarried with the said Nancy Cockerham, daughter of Elisha Estis, by whom he had children, towit, Catharine Cockerham, now Catharine Dobbs, Polly Cockerham, now Polly Dobbs, Patsey Cocker-

ham, now Patsey Shannon, and Elisha Cockerham: that after his intermarriage with the said Nancy Cockerham, the said Elisha Estis did, for reasons not certainly known to these respondents, lend or give to the said William W. Cockerham and his wife, the said Nancy, the aforesaid negro woman Hannah, and upon the condition, that the said Hannah and her increase or offspring, should, after the termination of said loan or gift, or after the death of the survivor of the said William W. Cockerham and Nancy his wife, be the property of the children of the said Nancy Cockerham: that the said William W. Cockerham, in his life time, on the 15th October, 1806, acknowledged in writing, under his hand and seal, (which writing is ready to be produced) that said negro Hannah was loaned to him, and that he never had any right, title, claim, or demand to the said Hannah, or to her increase, but that they did, and ought of right and justice to belong to the children of his then wife, Nancy Cockerham, which children are the persons above named : that at the time of the death of the said William W. Cockerham, there were in his possession, only Hannah, Martin, Frank, and Lucy, of her increase; the others of her increase, had previously been distributed among the children of the said Nancy, by the authority which they believed they possessed under the terms of the original gift or loan : that the said negroes, nor any one or more of them, have never been in the possession or knowledge of the respondents, as administrator and administratrix, as part of the estate of the said William W. Cockerham, but that they have ever been in the possession of those to whom they were distributed as aforesaid, in the life-time of the said William W. Cockerham, except the four, which as afore-

said, were in the possession of the decedent at the time of his death, and since then they have remained, and still are, in the possession of the said Nancy Cockerham, as her rightful property, during her life-time according to the terms of the original gift or loan, and then to become the property of her children."

To this answer, the distributees filed a demurrer, which upon argument was overruled, and leave given them to reply ; upon which they filed a replication, stating that the said Hannah was not given as a loan, but absolutely, and without condition or limitation : that the negroes were all in the possession of the decedent in his life-time, and at the time of his death, and that they are subject to general distribution among all the heirs of the said decedent, and not exclusively among the children of the said Nancy Cockerham; they deny all the allegations in the answer, and put themselves upon the country.

To this replication, there was a demurrer, which was overruled, and the administrator had leave to join issue, which was done, and the sheriff was ordered forthwith to summons and impannel a jury of bystanders, to try the issue, which was done, and a verdict was rendered, finding the four negroes subject to general distribution, as a part of the property of the estate of William W. Cockerham ; the jury also assessed the value of each negro, and the value of the hire of each, during the time they had been in the possession of the administrator and administratrix. A motion was then made to arrest the judgment of the Court, which was overruled, and the Court then proceeded to render judgment, as well upon the verdict as upon the evidence adduced, and taking the value of the estate previously inventoried and sold, and the value of the negroes and their hire, as assessed by the jury,

proceeded to decree distribution in money to the various distributees, fifteen in number, and directed executions or attachments, as might be required, to enforce the decree of distribution.

This case has been brought by writ of error into this Court, and several assignments have been made and argued. The first question which will be noticed in the view which the Court has taken of the case, is—Whether the County Court has jurisdiction, in a case where the truth of an inventory is questioned, so far as to try the right of property? This cannot be done by the eclesiastical courts in England. An inventory is there required for the benefit of creditors, legatees and parties in distribution, and it must, by statute of 21 Henry VIII, be exhibited on oath, which the ordinary is bound to receive. The creditor may state objections to the inventory, which the party is bound to answer upon oath, but no evidence is admissible to contradict the answer. If the creditor be still dissatisfied, he may have recourse to equity for relief;[a] and it appears that legatees and distributees, though they may require an account from the administrator in that Court, cannot dispute there, the truth of the inventory.[b] When a question of this kind is raised, the party is entitled *ex debito justitiæ*, to an assignment of the administration bond, and to sue in the name of the ordinary, when he can assign as a breach, the not exhibiting a true inventory.[c] That Court having neither Common law or Chancery powers, is prohibited from taking jurisdiction.[d]

In the case of the *Selectmen of Boston* vs. *Boylston*,[e] the Court say, "that upon consideration we are all of opinion, that the Probate Court in adjusting an account exhibited by an executor or administra-

[a] Toller on Ex. 252—3 Burr. 1942.

[b] Toller on Ex. 493.

[c] ib. 495.

[d] 2 Fonbl. Eq. 418.

[e] 4 Mass. Rep. 318.

tor, are competent, having satisfactory evidence before them, to require an allowance of assets not inventoried or credited. But they say farther, that in the exercise of the authority, the Probate Court ought to employ its discretion in rejecting or suspending the account; that the party may have his remedy at law, by allowing him to prosecute his remedy upon the administration bond. The reason assigned by the Court is, that to proceed in that summary way, would deprive the party of the advantage of a trial upon more formal proceedings and before a jury, to determine the facts contested; and upon the whole view of that case, the Court directed a trial at law upon the bond. They admit, however, the power of the Court to proceed.

In the case of *Higbee, et al.* vs. *Bacon, adm'r,*[a] the Court decided, that the party at whose instance interrogatories have been proposed in the Court of Probate, to an administrator touching his account, has a right to offer evidence to disprove his answers: in this case, the charge was, that the administrator had concealed monies and goods belonging to the estate.

We have looked into all the American authorities which we can find here, but do not find any cases in the other States, on the point. The most ordinary course appears to be, to proceed by suit on the administration bond, or by bill in Chancery. The question is one of great practical importance, and is entirely new in this State, so far as we are advised. Upon a consideration of the case, however, and an examination of our statute, we are of opinion, that the Court has jurisdiction, and that it was properly exercised in this case.

The Judges of the County Courts in this State, sitting as Judges of Probate, have all the powers of

*a 3 Pick. 484.*

Courts of Ordinary in England, and by statute, various other powers are given to enable them to settle, and finally adjust every question that can arise in relation to estates.

By the act of 1821,[a] executors and administrators are required, within three months, to return, under oath, a full inventory of all goods and chattels, rights of and debts due or accruing to the testator or intestate at the time of his death, which have come to their knowledge or possession; setting forth the times at which they are due, and whether by open account, promissory note, or bond; which is to be recorded. The Judge of the Court is to examine and audit all the accounts of ex'rs and adm'rs for final settlement, giving forty days notice of the time and place to all persons interested in the accounts, and if any person interested in the settlement shall make exception to the report of the Judge, the Court shall proceed to hear the proofs and allegations, and correct or amend the errors or mistakes, or refer them to auditors to do the same, who are to make report at the next term of the Court, of their proceedings, for confirmation.

By the 24th section of the act of 1821,[b] the documents and evidence of all settlements made with executors and adm'rs, are to be carefully preserved by the clerk, and the *settlement* entered of record; which evidence, vouchers, documents and *settlement* shall be good evidence in any suit for or against the executors and administrators, and shall not be impeached, except for *fraud in obtaining the same.*

By the sixth section of the same act, (page 251,) the Court may, in all cases where it may be necessary, to have *any matter before it tried by a jury*, order the sheriff to forthwith summon and impannel a jury,

*[a] Aik. Dig.182, sec. 26.*

*[b] Aik. Dig.252, sec. 32.*

to try the facts: and by the first section of an act of 1830, (page 252) all decrees by the Orphans' Court, on *final settlements* of the accounts of ex'rs or adm'rs, shall have the force and effect of judgments at law, and executions may issue for the collection of the several distributive amounts against them ; and when distribution of real or personal estates is decreed by the said Court, each distributee, heir, or devisee, may and shall have his or her writ of execution or attachment—one or both in the case of personal estate, and in case of real estate, a writ of *habere facias possessionem* against the executor, administrator or guardian : and by the second section of an act passed in 1832, where an execution against an executor or administrator, on a final settlement, is returned *no property found,* execution may issue on the bond.[a]

aAik: Dig.253, sec. 40.

The power to examine into the facts growing out of a contested inventory, is not expressly given ; but the power to adjust and audit all accounts of administrators, we think, embraces the case.    The inventory is a part of the account.    The settlement, when made, is to be final, and to have the effect of a judgment.    A jury is authorised to try every contested fact, as fully as it can be done before the Circuit Court, and a specific execution of the decree, when property is withheld, can be had by attachment.    This remedy is much more speedy, and equally as safe to all parties, as the action at Common law, or a bill in Chancery. 'Every question of law that can arise, can be reserved by bill of exceptions, and the revising power of the higher tribunals is equally open to the parties, as in other cases.    We, therefore, do not feel at liberty to deny to the Court, the jurisdiction it has exercised in this case.

By this opinion, we do not, by any means, intend to deprive distributees, &c. of the remedies by action on the bond, or by bill in chancery. They are undoubtedly concurrent, and the administrator may be proceeded against in either way.

We are of the opinion also, that the administrators were properly subjected to the payment of hire for the time the negroes were in their possession, and that there was no error in the mode in which the amount was ascertained.

But we think the Court did err, in charging the administrators with the value of the four slaves, as found by the jury, and in making distribution in cash. By the verdict, the negroes were found subject to distribution, and should have been divided among the distributees, or if that could not be done, they should have been ordered to be sold at public auction, under the first section of the act of 1820,[a]  [a] Aik. Dig. 155. sec. 12.

It is, therefore, the opinion of the Court, that the decree of the County Court be affirmed, except as to that part which charges the administrators with the value of the slaves, and the distribution made under it, and that, as to that, the same be reversed and the cause remanded.