## TAYLOR v. POPE.

1. It appeared by a covenant executed by both parties, that P formerly had pur-
chased two tracts of land from T ; but, having failed to pay for them, the con-
tract of sale was rescinded—T covenanting that P should remain in possession
until the 25th December, 1838, at which time he was to surrender the premi-
ses; but, both parties covenanted to use their best endeavors, in the mean
time, to sell the land, and if they succeeded in obtaining three thousand one
hundred and fifty-two dollars, or more, P was to receive the overplus. *Held*,
1. That either party was at liberty to sell the land, provided the sum named
could be obtained; but T was not obliged to part with his title until that sum
was paid to him in money. 2. That T was not obliged, nor P authorised, to
sell upon credit. 3. That if a new agreement was entered into, by which T
agreed to receive notes, or any other thing, or to sell the land on a credit, this
agreement could not be subjoined to a covenant, so as to authorise a recovery
for the damages consequent on the breach of the new agreement, in the suit
on the covenant. 4. That to entitle P to recover damages of T, for not using
his best endeavors to sell the land, it must appear that more than three thou-
sand one hundred and fifty two dollars could have been obtained by T; as
otherwise, there could be no overplus, and P not being entitled to any collate-
ral advantages arising from the sale, in consequence of an agreement be-
tween him and the contemplated purchaser. 5. When breaches are assigned
in a declaration on a covenant, and one of them is defective, no advantage can
be taken by general demurrer. 6. It is error in the County Court to refuse the
defendant permission to withdraw a plea; and consequently, the issue formed
on it, in an action of covenant, when all the expenses incident to the issue are
offered to be paid.

Writ of error to the County Court of Talladega county.

ACTION of covenant. The declaration set out the agree-
ment of the parties at length, and it is in these words: "This
indenture made and confirmed this day, between Henry Tay-
lor of the one part, and Peter Pope of the other part, witness-
eth: That whereas, Henry Taylor did sell to said Pope two
certain tracts of land, lying and being as follows, to wit: The
west half of the east quarter of section 5, township 21, range
4, containing eighty acres, more or less: Also, the east half of
section 8, township 21, range 4, containing three hundred and
twenty acres, more or less, all in the county and State afore-
said; and whereas, said Pope has failed to make payment to
the said Taylor according to the contract made and entered
into between them. Now, therefore, be it known, that the

said Taylor guarantees to the said Pope, a possession of the said premises, until the 25th day of December next, and no longer, at which time I, Peter Pope, do agree to surrender to the said Taylor, the said premises, together with all the appurtenances thereunto belonging: Provided, nevertheless, that we are both to use our best endeavors to make sale of said lands, and if we should succeed in selling them for thirty-one hundred and fifty-two dollars, or more, said Pope is to receive the overplus above the sum above specified. The liberty of making sale of the said laid, is limited to the time of giving possession, as above stated. Witness our hands and seals, this 24th August, 1838." And it is signed and sealed by each of the parties.

The declaration then proceeds to aver, "that the said land in the said covenant described, had been previously sold by the defendant to the plaintiff, and the latter, in part consideration for the same, had paid a large sum of money, to wit: The sum of —— dollars, and being unprepared to make the residue of the payment for said land, as had been stipulated between the parties, it was therefore agreed and stipulated between them, as by the covenant herein sued on and exhibited, will at large appear; that the plaintiff was to restore and return the possession of the said land so sold to him, to the defendant, on the 25th day of December next, succeeding the date of the covenant.— But by the substance and true intent, meaning and legal import of the proviso to the said covenant attached, the plaintiff was allowed, and the defendant was bound to use, each his best endeavors to make sale of said land; and if either the plaintiff or the defendant, should succeed in selling the same for the sum of thirty-one hundred and fifty-two dollars or more, the plaintiff was to receive the overplus, and whatever advantage might accrue or arise from such sale, over and above that sum, that being the amount still due and unpaid to the defendant, of the whole sum originally agreed to be paid by the plaintiff to the defendant for said lands, and the said proviso being intended for the benefit and indemnity of the plaintiff, for the sum he had already paid, to wit, the said sum of —— dollars aforesaid, and the lasting and valuable improvements he had made on said lands. And now the plaintiff in fact, further avers, that the said defendant has not kept and performed his undertakings and stipulations in said proviso to the said covenant at-

tached, but has broken the same in this, to wit, that he, the defendant, from the date of the said covenant to the said 25th day of December thereafter, did not use his best endeavors to make sale of the said lands therein described, so that the same might command the said sum of thirty-one hundred and fifty-two dollars, or more, and that an overplus might accrue to the plaintiff, over and above the said sum. And the plaintiff further avers, that he, the plaintiff, using his best endeavors to make sale of the said lands, as by the said proviso authorised, did make an agreement and arrangement with one McPherson, at the county aforesaid, to sell him the said lands in the covenant described, for thirty-one hundred and fifty-two dollars, the amount specified therein, which said sum said McPherson was to pay over to the defendant, with an additional agreement on the part of the said McPherson, that the said lands should be still continued in his hands as such purchaser, free and open for sale, for the benefit of the plaintiff, and that the plaintiff should be entitled to receive whatever amount the lands could or should subsequently be sold for, over and above the amount, with interest, so to be by him paid therefor. And said plaintiff avers that the said lands could have been sold under such arrangements and agreements, for a much larger amount than was to be paid by said McPherson, to wit, for the sum of two thousand dollars more, to which the plaintiff would have been entitled, and of all which said agreement and arrangement with the said McPherson, and the extent to which plaintiff's interest would be advanced thereby, the defendant had notice and perfect knowledge, and did in fact consent to ratify and confirm the said sale and arrangement. But fraudulently and unjustly intending to injure and oppress the plaintiff, the said defendant did refuse to ratify and confirm said agreement and arrangement with the said McPherson, as made by the said plaintiff, though the said McPherson offered to fulfil the same on the —— day of ——, 18—, and thereby utterly defeated said sale, to the great injury of the said plaintiff; all which was between the date of the said covenant and said 25th day of December, at which time the privilege of selling the said lands was to expire.

And the plaintiff further avers, that the defendant could have sold said lands to divers individuals, if he had used reasonable

diligence so to have done, to wit, at the county aforesaid, within the period in the said covenant specified, to wit, to ———— for the sum of five thousand dollars, and to ———— for the sum of five thousand dollars, which would have yielded an overplus for the benefit of the plaintiff, over and above the said sum of thirty-one hundred and fifty-two dollars, of 1848 dollars. Yet the said defendant fraudulently and unjustly failed to do so.— By reason of which several breaches, the plaintiff says he is injured and has sustained damage to the value of four thousand dollars ; whereupon he sues.

The defendant demurred to this declaration, but his demurrer was overruled. He then pleaded,

1. *Actio non,* because he says that he has well and truly kept and performed his covenant in all things, according to the true intent and meaning thereof, and hath not committed the breaches thereof, in manner and form as the plaintiff hath alleged, and of this he puts himself upon the country.

To this plea, the plaintiff first demurred, and after his demurrer was overruled, joined issue to the country.

2. And for a further plea to the first breach assigned in said plaintiff's declaration, the said defendant says *actio non,* because he says that no sale of the said land was ever made, or could have been made, with the said McPherson, as therein averred, for the sale of the land to him, and the payment of the sum of thirty-one hundred and fifty-two dollars *in money,* by him, the said McPherson, to the defendant in manner and form as the said plaintiff has alleged, and of this he puts himself upon the country.

To this plea the plaintiff demurred, and his demurrer was sustained.

3. And for a further plea, said defendant says *actio non,* because he says he did use his best endeavors to make sale of the said land, as by the stipulations of the said covenant, he had undertaken and agreed to do according to the true intent and meaning of the said covenant, and of this he puts himself upon the country.

The plaintiff demurred to this plea, and after his demurrer was overruled, he then joined in the issue.

4. And for a further plea to the whole declaration, the said defendant says *actio non,* because he says, that at no time since

the making of the said covenant, could the said land in the said declaration mentioned, have been sold for thirty-one hundred and fifty-two dollars *in money*, as the said plaintiff in his declaration hath alleged, and of this he puts himself upon the country.

To this plea the plaintiff replied, *precludi non,* because he says, that after the making the said writing sued on, he did then and there, in the county aforesaid, between the time of making the same, and the 25th day of December, 1838, make a covenant with Col. McPherson, for the sale of the land mentioned in the writing sued on, of which writing he craves oyer, &c. for the sum of thirty-one hundred and fifty-two dollars, to be paid in cash notes, which said cash notes the defendant did then and there agree to receive of McPherson; and the defendant consented and agreed to said contract of sale, and for the further consideration, that plaintiff was to have the possession of the said lands, and the same were afterwards to be sold, and the plaintiff was to have the overplus of the said sale money, over and above the sum of thirty-one hundred and fifty-two dollars, and interest; which said contract, in all its stipulations, was then and there agreed to by the defendant, but afterwards the defendant, in the county aforesaid, did refuse to receive the said cash notes, and to satisfy the said sale; and this the said plaintiff is ready to verify.

To this replication the defendant demurred, and the demurrer was visited back on his plea, which was held to be bad, and insufficient to bar the plaintiff of his action.

5. This plea is the same as the fourth, except that the words, *in money*, are omitted.

To this the plaintiff replied, that the land mentioned in the writing sued on, and in the declaration, could have been sold within the time mentioned, for thirty-one hundred and fifty-two dollars, as he has alleged in his said declaration, and this he is ready to verify.

On this replication, issue was joined to the country.

6. This plea is the same as the second, except that the words, *in money*, are omitted.

On this plea, issue was joined to the country; at least, such is the inference from the recital of the judgment entry, which states that issues were joined on a rejoinder, to a replication to this plea, but no such pleadings appear on the record.

The cause was submitted to a jury on the several issues thus formed, and a verdict was returned for the plaintiff, on which judgment was rendered.

In the progress of the trial, the defendant asked leave to withdraw his fifth plea, as the issue formed on the replication to it, was immaterial; the defendant tendered the costs of the motion. The Court refused to permit him to withdraw it, and he then excepted.

In the further progress of the trial, the plaintiff introduced one McPherson, and offered to prove by him, that after the execution of the writing sued on and described in the declaration, the defendant agreed verbally with the plaintiff and McPherson, to receive notes, to be endorsed by the said McPherson, to the defendant, in substitution of that part of the written contract, to sell the land therein mentioned, for thirty-one hundred and fifty-two dollars; and that at the time appointed by them, McPherson was ready, and offered to endorse the said notes, but the defendant refused to accept them. To the introduction of this evidence, the defendant objected, but the Court admitted it, whereupon the defendant excepted.

The plaintiff then offered to prove by McPherson, that some time after the agreement sued on, was executed, the defendant and the plaintiff came to the house of the witness, and it was thereupon agreed, between them and the witness, that the latter should pay over and indorse to the said defendant, good notes, for the sum of $3,152, and the defendant agreed that he would receive the same in lieu of the debt due to him from the plaintiff. These notes were to be endorsed by the witness to the plaintiff, under the understanding between themselves, to which the defendant was not privy, that witness was to have a return to the amount, with interest, and the defendant was to keep the land, or sell it for his own advantage. To the introduction and admission of this evidence, the defendant objected, but his objection was overruled: whereupon he excepted.

The plaintiff introduced a witness, and offered to prove by him, the value of the improvements made on the land by the plaintiff. To the admission of this evidence, the defendant objected, and on its admission by the Court, he then excepteed.

The plaintiff then proved by the witness, that on the said

land, there was a comfortable house, and about seventy-five acres of cleared land. The plaintiff's counsel asked what would be the yearly value of such a house to a man situated as the plaintiff was, and with such a family. To this question the defendant objected, but it was allowed to be asked; and the defendant excepted.

The plaintiff then proved by another witness:

1st. The yearly value of the premises.

2d. The actual and entire value of the same.

3d. That by the original contract of purchase, the plaintiff had contracted to pay the defendant $4,250.

4th. That he had paid $1098 before the rescission of the contract.

To all of this the defendant objected, as illegal and irrelevant, but it was admitted, and the defendant excepted.

After the plaintiff had closed his evidence, the defendant proposed to demur to it, and accordingly drew up his demurer to the evidence, but the Court refused to compel the plaintiff to join in demurrer, to all which the defendant excepted.

On this state of the evidence, the County Court charged the jury:

1. That if they believed from the evidence, that Pope had made an arrangement with McPherson, to settle the $3,152 in cash notes with the defendant, and that by this arrangement, Pope was to retain the possession of the land, and the arrangement was agreed to by Taylor; then if McPherson was ready and offered to perform his part of the agreement, and Taylor refused to perform his part, they ought to find for the plaintiff.

2. That in this case, on a sale of the land, after the making of the covenant sued on, $3,152 or upwards, the parties were not restricted to a sale for gold or silver.

3. If they believed the defendant, within the period designated by the covenant, could have sold the land for any thing more than $3,152, and that he failed or refused to do so, they ought to find for the plaintiff.

4. That if from the evidence, they believed the land in 1838, was worth $4000, from this circumstance they might presume it could have been sold for more than $3,152.

5. That the right of retaining possession of the lands by Pope, under the arrangement said to have been made with MPher-

son, is a condition over and above the sum stipulated as the minimum of the sale.

6. That the statute of frauds and perjuries has no application to the facts and testimony involved in this case.

7. That under the covenant, Pope had a right to make a contract for the sale of the land, and if Taylor refused to receive his part, that is $3,152 in cash notes, it, (the sale) was as binding as if the land had been sold for gold and silver; that Pope had the right to receive the overplus above $3,152 in occupying the land, or in any thing else he might choose.

The defendant excepted to these charges, and a bill of exceptions was signed and sealed at his instance.

He now assigns, that the County Court erred in each of the several judgments, in overruling his demurrers to the plaintiff's pleadings; in sustaining the plaintiffs demurers to his pleas; in refusing permission to withdraw his fifth plea under which an immaterial issue was submitted to the jury; in refusing to compel the plaintiff to join in the demurrer to the vidence; and the several charges as given.

Moore, for the plaintiff in error.

No counsel appeared for the defendant.

GOLDTHWAITE, J.—1. The prolixity of the pleadings, and the number of questions growing out of them, as well as those raised at the trial, render it inconvenient to notice them separately; for this reason we propose to examine, very briefly, the law as applicable to this covenant, and then to make its application to the case on the record.

It appears that Pope, formerly had purchased two tracts of land from Taylor, but having failed to pay for them, the contract of sale, was rescinded: Taylor covenanting that Pope should remain in possession until the 25th December, 1838, at which time Pope was to surrender the premises, but in the meantime, both parties covenanted to use their best endeavours to sell the land, and if they succeeded in obtaining $3,152 or more, Pope was to receive the overplus.

By the terms of this covenant, it is clear that either party was at liberty to sell the land, provided the requisite sum could be obtained; but Taylor was not obliged to part with his title until $3,152 was paid to him in money; he was not obliged,

nor Pope; authorised to sell upon a credit. If, therefore, a new agreement was made, by which Taylor undertook to receive notes, or any other thing, or to give a credit, it could not be subjoined to this covenant, so as to authorise a recovery for the damages consequent on the breach of the new agreement, in the suit on the covenant.

My own opinion is, that as the covenant, though signed by both the parties, individually, was for the benefit of Pope, that he would be entitled to any benefit or advantage, although it might not be in money, and therefore strictly within the pur-view of *more* and *overplus;* but a majority of the Court consider the covenant as securing nothing more to Pope than the overplus of the consideration received by Taylor, over the sum named; they consider this to be the ordinary acceptation of the terms used, and if any thing more had been intended, it ought to have been inserted in the covenant.

2. Then to apply this law of the covenant to the record. The declaration after setting out the covenant, assigns these breaches:

1st. That Taylor did not use his best endeavours to sell the land for $3,152 or more, so that an overplus might accrue to Pope.

2d. That Pope made an agreement for the sale of the land to one McPherson, for $3,152, to be paid to Taylor, and was also to be allowed by McPherson, all the benefits of a subsequent sale after refunding that sum and the interest, which would have benefitted Pope, $2000; that this agreement was communicated to, and assented to, by Taylor, who afterwards refused to comply with it.

3d. That Taylor, by the use of reasonable diligence, could have sold the land for $5000, whereby an overplus would have accrued to Pope. This declaration would be considered bad on special demurrer, in consequence of the attempt to introduce a new contract under this covenant, as is clearly the case in the second breach; and according to the opinion of a majority of the Court, the first breach is defective also, because, if Pope was only intitled to the overplus above $3,152, it was necessary to shew that more could have been obtained. But we are all of opinion that the demurrer was properly overruled, because it is general. The objection is one which cannot be

reached, since special demurrers have been abolished. Evans v. Watrous, 2 Porter, 328; Castles v. McMath, Ala. Rep. N. S. 326.

The second plea, is an answer to the second breach assigned, and although the word money is introduced, this does not disclose any new matter, because such is the legal effect of the averments, with respect to the agreement asserted to have been made with McPherson. The plea, then, is a denial of the declaration and presented, a proper issue, which should have been sustained.

The fourth plea, is in substance a denial of the first and third breaches; and the replication to it sets up a new contract, which is a departure from the declaration. The replication, therefore, should have been overruled, and the plea sustained.

An issue was already formed when the fifth plea was pleaded, and the only replication proper to it was a *similiter ;* but according to the opinion which has previously been stated, as that of a majority of the Court, it was immaterial to Pope if a *larger* sum than $3,152, could not be obtained. The defendant wanted to withdraw this issue from the jury, and we all concur that he should have been permitted to do so, as its trial in an action of this nature, could only tend to embarrass the case. That there may be cases in which a party would not be permitted to withdraw a plea, is a question which need not be decided; it is sufficient to say, that if there are such, this is not one of them. The evidence given by McPherson, established a contract entirely different from that contained in the covenant, and the declaration, and ought therefore to have been rejected.

Without separately examining the other evidence, in this place, we shall content ourselves with remarking, that it is all inconsistent with the law of the case, as we have heretofore stated it.

With respect to the charges given to the jury, none can be sustained, except the third.

As the view we have taken, will probably be decisive of this controversy, we omit to determine the question presented on the record, with respect to the demurrer to the evidence; remarking, that the defendant has already attained all the benefit he could, by considering that the County Court also erred, in this particular.

Let the judgment be reversed and the case remanded.